## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAUREEN KELLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cv-11028-JEK |
| ) | |
| SELECT PORTFOLIO SERVICING and ) | |
| U.S. BANK TRUST, NATIONAL ) | |
| TRUST ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

**KOBICK, J.**

Plaintiff Maureen Kelley, as personal representative of the Estate of Edward C. Kelley, filed this action against defendants Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank Trust, National Association, not in its individual capacity but solely as Trustee of Citigroup Mortgage Loan Trust 2021-RP2 (the "Trust").[1] Maureen alleges that SPS, as the Trust's loan servicer, sent a defective notice of Edward's right to cure his mortgage default. In her view, the notice did not strictly comply with Massachusetts law or the terms of the mortgage contract. Pending before the Court are the defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and motion to strike the amended complaint pursuant to Rule 15. The Court will allow the filing of the amended complaint and, with the acquiesce of the parties, treat the pending motion to dismiss as a motion to dismiss the amended complaint. That motion will, in turn, be granted,

---

[1] To avoid confusion, this Memorandum and Order will refer to Maureen Kelley as "Maureen," and Edward Kelley as "Edward."

because the default notice complied with the terms of the mortgage contract and with M.G.L. c. 183, § 21. The defendants' motion to strike will be denied.

## BACKGROUND

The following facts, drawn from the amended complaint and documents incorporated by reference therein, are accepted as true for purposes of the motion to dismiss. *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024).

Edward owned property at 763 Old Stage Road in Centerville, Massachusetts from July 2003 until his recent passing. ECF 16, ¶¶ 5, 10-11. In April 2016, he secured a $332,600 loan from Mortgage Electronic Registration Systems, Inc., as nominee for Ditech Financial LLC, through a mortgage on that property. *Id.* ¶ 12; ECF 11-2, at 1-2. Paragraph 22 of the mortgage, which bears on this case, provides in pertinent part:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

ECF 16, ¶ 13; ECF 11-2, ¶ 22 (bold omitted). Following a series of mortgage assignments not at issue here, the defendant Trust became and remains the mortgagee of record. ECF 16, ¶ 14; *see* ECF 11-3 through 11-6. SPS, the other defendant, is the Trust's loan servicer. ECF 16, ¶¶ 1, 6.

On May 28, 2024, SPS, on behalf of the Trust, sent Edward a "90-Day Right to Cure Your Mortgage Default" notice by certified mail, with return receipt requested, and by first class mail. *Id.* ¶ 17; ECF 11-7. The body of the default notice conformed to the template notice prescribed by the Division of Banks at 209 Code Mass. Regs. 56.04, which implements M.G.L. c. 244, § 35A.

*Compare* ECF 11-7, *with* 209 Code Mass. Regs. 56.04. The notice stated that "[t]he mortgage on [Edward's] property is in default as a result of [his] failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument)," and that he "must pay the past due amount of $2,656.42 on or before August 29, 2024, which is 90 days from the date of this notice." ECF 11-7, at 4, 6. It further stated:

> If we do not receive the past due amount by the date listed in the notice, or some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require the immediate payment in full of the entire outstanding unpaid amount on the account. In other words, failure to cure the default . . . may result in acceleration of sums secured by the Security Instrument and sale of the Property.

*Id.* at 6. The default notice also detailed Edward's "right to bring a court action to assert the non-existence of a default or any other defense [he] may have to acceleration and sale" and his "right to reinstate after acceleration of [his] loan." *Id.* The notice added that "[i]f [he] reinstate[s], the Security Instrument shall remain fully effective as if no acceleration had occurred." *Id.*

Representing Edward's Estate, Maureen filed a complaint in Barnstable Superior Court against the Trust and SPS in March 2025. ECF 1-1. Her only claim alleges that the defendants failed to comply with M.G.L. c. 183, § 21 and paragraph 22 of the mortgage, which specifies the contents of the notice that must be given before the mortgagee can accelerate the loan and begin foreclosure proceedings. ECF 16, ¶¶ 22-49.[2] Invoking diversity jurisdiction, the defendants

---

[2] The parties represent, and the Court agrees, that this claim is ripe for review. *See Pereira v. Rushmore Loan Mgmt. Servs. LLC*, No. 24-cv-10979-JEK, 2025 WL 369834, at *2 n.4 (D. Mass. Feb. 3, 2025). A claim is not ripe if it "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *City of Fall River v. F.E.R.C.*, 507 F.3d 1, 6 (1st Cir. 2007) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The amended complaint alleges that Edward's mortgage has already been accelerated. ECF 16, ¶ 14. If, as Maureen alleges, the cure notice is deficient under the terms of the mortgage, then her success on her claim could prevent the defendants' impending foreclosure of her property. *See id.* ¶¶ 2, 21, 34-36, 39; *Pinti v. Emigrant Mtge. Co.*, 472 Mass. 226, 238 n.20 (2015) ("Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor.").

removed the case to this Court in April 2025. ECF 1.[3] They then moved to dismiss the complaint for failure to state a claim on May 30, 2025. ECF 10. Maureen was granted two extensions of time to respond to the motion to dismiss. ECF 12 through 15. But rather than respond to that motion, she filed an amended complaint on July 9, 2025. ECF 16. The amended complaint corrected a handful of scrivener's errors but did not substantively change the allegations in the complaint. *See* ECF 17, at 2 (identifying errors corrected in paragraphs 17, 19, 20, and 32 of the complaint). Fourteen days later, the defendants moved to strike the amended complaint, contending that it was not a timely amendment as of right under Federal Rule of Civil Procedure 15(a)(1), and that Maureen had not obtained their consent or leave of Court to file an amended complaint under Rule 15(a)(2). ECF 16, 17. Maureen's opposition to that motion was, in substance, an opposition to the motion to dismiss rather than an opposition to the motion to strike. ECF 18.

   The Court held a hearing on both motions on November 3, 2025. ECF 23. At that hearing, counsel for Maureen represented that he had mistakenly believed that the extensions of time for him to respond to the motion to dismiss also effectively enlarged Maureen's time to file an amended complaint as of right under Rule 15(a)(1). Both counsel further stated that, should the Court allow the amended complaint, it should treat the defendants' pending motion as a motion to dismiss that pleading and Maureen's opposition to the motion to strike as an opposition to the motion to dismiss. In the interests of justice, the Court construes Maureen's counsel's argument at

---

[3] The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, as the initial complaint demanded $800,000 and the original principal amount of the mortgage is $332,600. ECF 1-2, at 2; ECF 7, at 19; ECF 1, ¶ 9; *see McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212-13 (1st Cir. 2012). There is also complete diversity of citizenship. Maureen is a citizen of Massachusetts. ECF 16, ¶ 5. SPS is incorporated and has its principal place of business in Utah. ECF 1, ¶ 7. And the Trust is a national banking organization whose articles of association designate Delaware as its main office. *Id.* ¶ 6; *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).

the hearing as an oral motion for leave to file an amended complaint under Rule 15(a)(2). Because the amended complaint does not substantively change Maureen's allegations, and its filing does not prejudice the defendants, the Court will grant that oral motion, deny the defendants' corresponding motion to strike the amended complaint, and proceed to consider the defendants' motion to dismiss the amended complaint. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (describing "the preference expressed in the Federal Rules of Civil Procedure . . . for resolving disputes on their merits"); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008) ("[T]he district court enjoys significant latitude in deciding whether to grant leave to amend.").

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

## DISCUSSION

The amended complaint alleges that the defendants issued a defective default notice in May 2024 that failed to comply with M.G.L. c. 183, § 21 and the terms of the mortgage contract. As "'a non-judicial foreclosure state,'" Massachusetts "allows a mortgagee to foreclose on a mortgaged property without judicial authorization, so long as the mortgage instrument grants that right by reference to the statutory power of sale." *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 291 (2020) (citing *Pinti v. Emigrant Mortg. Co.*, 474 Mass. 226, 232 (2015)). To exercise that "'[s]tatutory power of sale,'" a mortgagee must "first compl[y] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." M.G.L. c. 183, § 21. "Because of the 'substantial power . . . to foreclose in Massachusetts without judicial oversight,'" the Supreme Judicial Court "repeatedly ha[s] emphasized that 'one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale is wholly void.'" *Thompson*, 486 Mass. at 291 (quoting *Fed. Nat'l Mortg. Ass'n v. Marroquin*, 477 Mass. 82, 86 (2017)).

The "regime of strict compliance" does not, however, require the "mortgagee to 'demonstrate punctilious performance of every single mortgage term.'" *Id.* at 292 (quoting *Pinti*, 474 Mass. at 235). The mortgagee must demonstrate strict compliance with "'(1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale—whether before or after the sale takes place.'" *Id.* at 292 (quoting *Pinti*, 472 Mass. at 235). Strict compliance is not mandated for other requirements, including, as relevant here, the pre-acceleration notice requirements set forth in M.G.L. c. 244, § 35A. *Id.* at 292-93; *see U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 422 (2014). Section 35A guarantees mortgagors the right to cure a

default by making "full payment of all amounts that are due" within 90 days, during which time the mortgagee cannot "accelerate" the mortgage obligation—that is, demand full payment of the loan—and begin foreclosure proceedings on the property. M.G.L. c. 244, § 35A(a)-(b). The statute also prescribes the content of the notice that must be given for this 90-day right to cure. *See id.* § 35A(c); *Thompson*, 486 Mass. at 289. Such notices must inform the borrower of, among other things, their right to cure the default, the amount owed, the date by which they must cure, and the fact that failure to cure may result in acceleration and foreclosure. M.G.L. c. 244, § 35A(c). Since Section 35A "is designed to give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced," the right to cure "is a preforeclosure undertaking" that does not "'relat[e] to the foreclosure of mortgages by the exercise of a power of sale.'" *Schumacher*, 467 Mass. at 431 (quoting M.G.L. c. 183, § 21). To implement Section 35A, the Division of Banks "has issued regulations specifying the precise form that this notice must take." *Thompson*, 486 Mass. at 289 (citing 209 Code Mass. Regs. 56.04).

In *Thompson*, the Supreme Judicial Court described what is known as a "hybrid notice," which provides the borrower with the notice required by both Section 35A and paragraph 22 of Edward's mortgage. *Id.* at 292-93; *see also id.* at 294-95 (noting that the paragraphs "of the GSE Uniform Mortgage are better served by a single accurate notice rather than two potentially conflicting communications"); *Diplomat Prop. Manager, LLC v. Wilson*, 99 Mass. App. Ct. 1104 (2020) (Rule 23.0 decision) (describing hybrid notices as "permitted, and even preferred").[4] Paragraph 22 of Edward's mortgage states, in pertinent part, that:

---

[4] Paragraph 22 of Edward's mortgage is the same as paragraph 22 of the standard form mortgage provided by the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) analyzed in *Pinti*. *Compare* ECF 11-2, ¶ 22, *with Pinti*, 472 Mass. at 228 n.6, 236 n.16.

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

ECF 16, ¶ 13. Because the provisions of this paragraph "constitute 'terms of the mortgage' governing the power of sale," the mortgagee must "comply strictly" with paragraph 22's "notice of default provisions" in any hybrid notice. *Pinti*, 472 Mass. at 240; *see Thompson*, 486 Mass. at 292 n.7. These provisions must "be accurate and not deceptive." *Thompson*, 486 Mass. at 293. Those portions of the hybrid notice addressing the notice provisions required by Section 35A are not, however, held to the same standard of strict compliance. *Id.* at 292 n.7.

The parties agree that the May 28, 2024 default notice is a "hybrid notice" sent to satisfy the Trust's obligations under paragraph 22 of the mortgage contract and M.G.L. c. 244, § 35A. *See Thompson*, 486 Mass. at 292-93; ECF 11, at 1. The parties further agree that the default notice strictly complies with sections (a) and (b) of paragraph 22 in the mortgage and adheres to the corresponding provisions of M.G.L. c. 244, § 35A and 209 Code Mass. Regs. 56.04. Consistent with section 22(a), the notice states that the "[t]he mortgage on [Edward's] property is in default as a result of [his] failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument)." ECF 11-7, at 6. And per section 22(b), the notice describes how he can avoid foreclosure by "pay[ing] the past due amount of $2,656.42." *Id.* at 4. The parties also agree that the notice strictly complies with the last sentence of the above excerpt from paragraph 22 and thus M.G.L. c. 183, § 21. Specifically, the notice discloses that Edward has "the right to reinstate

after acceleration of [his] loan" and "the right to bring a court action to assert the non-existence of a default or any other defense [he] may have to acceleration and sale." *Id.* at 6.

The parties part ways on whether the default notice strictly complies with sections (c) and (d) of paragraph 22 in the mortgage. The notice states that Edward "must pay the past due amount of $2,656.42 on or before August 29, 2024, which is 90 days from the date of this notice." *Id.* at 4. On its face, this language strictly complies with sections 22(c) and 22(d) because the date provided is, as required, "not less than 30 days from the date the notice [was] given,"[5] and it specifies that his loan may accelerate if he fails to cure the default. ECF 16, ¶ 13; ECF 11-2, ¶ 22 (bold omitted); *see* ECF 11-7, at 6. Maureen resists that conclusion, arguing that the May 28, 2024 notice falsely states that "August 29, 2024 . . . is 90 days from the date of this notice," when, in fact, 90 days from May 28 was August 26, 2024. ECF 11-7, at 4; *see* ECF 16, ¶¶ 18-20, 32; ECF 18, at 5-6. In her view, the notice was deceptive because it could have led Edward to feel confused about whether his right to cure expired on August 26 or August 29, and thus miss the opportunity to cure his default between August 27 and August 29.

This argument misses the mark because the August 26 or August 29 dates afforded Edward 90 or 93 days, respectively, to cure, which is far more than the 30 days strictly required by section 22(c) of the mortgage. *See O'Brien v. Nationstar Mortg. LLC*, No. 23-cv-10774-LTS, 2023 WL 5438792, at *2 (D. Mass. July 25, 2023) (rejecting similar challenge at the motion to dismiss stage where borrower was provided "well more than the thirty days strictly required by the mortgage"); *D'Anello v. Select Portfolio Servicing*, No. 23-cv-10149-JEK, 2025 WL 463400, at *6 (D. Mass. Feb. 11, 2025) (same at summary judgment). The 90-day cure period derives from M.G.L. c. 244,

---

[5] Pursuant to the mortgage, notice is "*given* to Borrower when mailed by first class mail or when actually delivered." ECF 11-2, ¶ 15 (emphasis added). Here, SPS sent the notice to Edward by first class mail, which provided him at least 90 days to cure. *See* ECF 11-7, at 4.

§ 35A, not from paragraph 22 of Edward's mortgage, and therefore is not subject to the strict compliance standard. *See Thompson*, 486 Mass. at 292 n.7. Nor is there any allegation that Edward sought to cure the default on August 26, August 29, or any time in between; that he was actually confused by the relevant date; or that the defendants accelerated the mortgage before August 29, 2024. The amended complaint alleges merely that "the notice articulates two cure dates that present an inaccuracy that *could mislead* the homeowner." ECF 16, ¶ 20 (emphasis added); *see* ECF 21, *Mitchell v. Selene Finance, LP*, No. 23-cv-12698-RGS (D. Mass. Feb. 8, 2024), *appeal pending*, No. 24-1237 (1st Cir. Mar. 7, 2024) (denying motion for leave to amend to add similar claim as futile where borrowers were "provided 87 days' notice" and did not allege that they were "actually confused or misle[d] by the date on the notice" or that "defendants accelerated any mortgage before 30 (or even 90) days from the mailing of the notice"). Because the May 28, 2024 notice complies with both Massachusetts law and the mortgage contract, Maureen's sole claim alleging that the notice is inaccurate or deceptive will be dismissed.

### CONCLUSION AND ORDER

For the foregoing reasons, the defendants' motion to dismiss, ECF 10, is GRANTED, and their motion to strike the amended complaint, ECF 17, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: November 7, 2025                     UNITED STATES DISTRICT JUDGE